UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID OLSEN,<br><br>  Plaintiff,<br><br>  v.<br><br>HORTICA INSURANCE COMPANY,<br><br>  Defendant. | Case No.  5:21-cv-03891-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 9 |

Plaintiff David Olsen brings this action asserting violations of the California Fair Employment and Housing Act ("FEHA") against Defendant Hortica Insurance Company ("Hortica"), a subsidiary of Sentry Insurance Company ("Sentry"), alleging the following claims: (1) hostile work environment harassment in violation of Cal. Gov't Code § 12940; (2) failure to prevent harassment, discrimination, or retaliation in violation of Cal. Gov't Code § 12940(k); (3) "disparate treatment" discrimination in violation of Cal. Gov't Code § 12940(a); and (4) disability discrimination in violation of Cal. Gov't Code § 12940(m).  Compl., Dkt. No. 1-1.  Sentry[1] moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).  Def. Sentry Ins. Co.'s Not. of Mot. and Mot. to Dismiss ("Mot."), Dkt. No. 9.

The Court finds the motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b).  Having considered the parties' written submissions, the Court GRANTS

---

[1] Sentry asserts that Hortica is improperly named as a defendant in this case. Mot. at 1.  The complaint appears to treat Hortica and Sentry as a single entity.  *See* Compl. ¶ 4.

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING MOT. TO DISMISS

1

the motion with leave to amend.

## I. BACKGROUND

Hortica (now Sentry) is an insurance company located in Wisconsin.[2] Compl. ¶ 4. Olsen is a California resident. *Id.* ¶ 3. At some point prior to 2016, Hortica hired Olsen as an insurance broker specializing in horticulture/agriculture insurance. *Id.* ¶ 5.

According to Olsen, at the time he joined Hortica, he "was promised certain employee benefits that never came to fruition." *Id.* ¶ 9. He does not describe these benefits. Olsen says that the team of female Hortica employees in charge of his "assimilation" into the company "hated men," and that "many of the nearly 90% women at the home office disliked working with men." *Id.* In particular, Olsen identifies his administrative assistant Ella Exton, underwriter Beth Watson, national director Traci Dooley, and CEO Mona Haberer as among these employees. *Id.* ¶¶ 10, 12. He says that these women "openly would defame [him] around the office," and that he "was pigeon[-]holed early as just a 'man' and for that reason they hated [him]." *Id.* ¶ 10.

Olsen shared his territory with Nicole Akemon, who he says "took an immediate and hostile dislike" to him and "worked every angle to get [him] fired and sabotage his career" because he is a "white Caucasian." *Id.* ¶ 11. Olsen says that Hortica management "stripped" him of his territory leads and gave his accounts and commissions to Akemon instead. *Id.* ¶ 12.

In 2016, Sentry merged with Hortica, after which Olsen alleges his situation grew worse. *Id.* ¶ 13. His new Japanese-American supervisor, Bob Otsuka, "help[ed] to aid and abet the pervasive antiwhite-male attitude within the company creating a hostile work environment" for him. *Id.* Olsen says that Otsuka would "yell, scream, and [make] up false accusations against" him. *Id.* ¶ 15. There are no details concerning the content of these statements. Olsen suggests that Otsuka facilitated "hostile and untrue claims" that Exton made against Olsen. *Id.* According to Olsen, Exton "was caught lying" about him and his work on more than one occasion, although he does not provide details about what those purported lies involved. *Id.*

---

[2] The Court has diversity jurisdiction over this matter. Dkt. No. 1.

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING MOT. TO DISMISS

2

In 2018, Olsen "sent a note demanding fair and equal treatment" and that as a result, Dooley traveled to California to apologize to him on behalf of the company. *Id.* Olsen says that Dooley "admitted . . . that the hostile work environment was 'her idea,'" that she thought he would "never make it," and that she "preferred" Akemon. *Id.* Olsen alleges that Sentry gave him "some house accounts" to "smooth things out," and that "things seemed to be getting better." *Id.* ¶ 16. This lasted until 2020, when Olsen says that Otsuka began "concocting lies, slander, libel and defamation of character" in order to force Olsen to quit, so that Otsuka and "the female leaders in the organization could take back [Olsen's] accounts." *Id.* ¶ 17. Again, there are no details about what these alleged falsehoods entailed. Olsen says that Otsuka was "allowed and even encouraged to fully retaliate against" him, but there are no details about who encouraged Otsuka or what that retaliation entailed. *Id.* ¶ 16. Olsen complained to Human Resources, but he was only offered the services of an in-house psychiatrist, and no action was taken to address what he believed was a hostile work environment. *Id.*

At another unspecified time, Olsen requested child bonding leave under the California Family Leave Act to spend time with his newborn son, but that request was denied. *Id.* ¶ 18. He says he was threatened with termination of an "unexplained absence" despite having a doctor's note confirming the birth of his son, which included the dates of absence. *Id.*

Olsen alleges that he suffered emotional and psychological abuse while employed at Hortica/Sentry and became physically ill from the hostile work environment and retaliation. *Id.* ¶¶ 19-20. He further alleges that in October 2020, he requested that Sentry "trigger a caveat" in his employment agreement that allowed him to "separate" from the company and buy his clients back. *Id.* ¶ 20. Instead, Olsen says, Sentry terminated him and stole his accounts. *Id.*

On November 4, 2020, Olsen filed a complaint with the Department of Fair Employment and Housing ("DFEH"). Compl., Ex. A at ECF 25. In the DFEH complaint, he alleges that he experienced discrimination and harassment and checked the boxes for the following reasons: Baby Bonding Leave, Color, Race, Sex/Gender, Sexual harassment – hostile environment, and Other. *Id.* at ECF 27. He wrote next to Other: "Slander, Libel, Defamation & emotional & Psychological

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING MOT. TO DISMISS
3

1   Abuse In the Course of employment." *Id.*  The DFEH complaint also alleges that as a result, he

2   was denied baby bonding leave, denied equal pay, denied hire or promotion, denied work

3   opportunities or assignments, forced to quit, and terminated. *Id.* at ECF 28.  The DFEH issued an

4   immediate Right to Sue notice on November 4, 2020.  *Id.* at ECF 24.

5        On April 19, 2021, Olsen filed suit in Monterey County Superior Court.  Compl.  On May

6   24, 2021, Sentry removed the action to federal court.  Dkt. No. 1.  On June 1, 2021, Sentry filed

7   the motion to dismiss now before the Court.  Dkt. No. 9.

## II.  LEGAL STANDARD

     Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  When deciding whether to grant a motion to dismiss, the Court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.  *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

     A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion.  If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING MOT. TO DISMISS
4

1   12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Likewise, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)).

## III. DISCUSSION

### A. Sentry's Request for Judicial Notice

Sentry requests the Court take judicial notice of two documents: (1) a California Secretary of State Application to Register a Foreign Limited Liability Company (LLC) for Olsen & Olsen Insurance Services, LLC, dated November 9, 2020; and (2) a WHOIS Database search result for OLSEN-INSURANCE.COM. Dkt. No. 9-4. Olsen does not object to Sentry's request. *See* Plf. David Olsen's Opp'n to Def.'s Mot. to Dismiss ("Opp'n"), Dkt. No. 13. However, because the Court need not rely on these documents to rule on the motion to dismiss, the Court denies the request to take judicial notice as moot.

### B. Sentry's Obligation to Meet and Confer

Olsen contends that Sentry's motion to dismiss "should fail" because defense counsel did not contact plaintiff's counsel to meet and confer prior to filing the motion. Opp'n at 3. Olsen asserts that such a meet and confer is required under Judge Saundra Brown Armstrong's Standing Order for Civil Cases. *Id.* This case is not and has never been assigned to Judge Armstrong, and consequently, her Standing Order does not apply to this action. However, the undersigned's own Standing Order for Civil Cases does apply here, and the Court expects all parties to familiarize themselves with its requirements.

### C. Claim 1: Hostile Work Environment Harassment

#### 1. Statute of limitations

Sentry argues that based on California Government Code § 12960(e)'s three-year statute of limitations, Olsen must allege facts sufficient to state a claim for harassment that occurred after

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING MOT. TO DISMISS

November 4, 2017—three years before he received his right to sue notice from the DFEH. Mot. at 5. However, Sentry says that the complaint alleges that things were "better" between 2018 and 2020, and the sole allegation within the statute of limitations period concerns Otsuka's attempt to "force Plaintiff to quit." *Id.* (citing Compl. ¶ 16). Because this allegation lacks support in any facts suggesting that Otsuka's conduct is attributable to Olsen's status as a "white, Caucasian male," Olsen has failed to state a claim. *Id.* at 5–6.

Sentry is correct that the three-year statute of limitations prevents Olsen from pursuing claims based on conduct or events that occurred prior to November 4, 2017. *See* Cal. Gov't Code § 12960(e)(5). The complaint as currently pled does not provide a clear timeline of events, but it appears to concern in large part conduct prior to November 4, 2017. Compl. ¶¶ 9-15. Olsen's opposition does not address the statute of limitations question at all, and the Court thus understands him to have conceded the issue. *See* Opp'n. To the extent Olsen seeks to base his claims on pre-November 4, 2017 conduct, those claims are time-barred.

### 2. Failure to state a claim

"FEHA prohibits harassment of an employee." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013); *see also* Cal. Gov't Code § 12940(j). Under FEHA, a plaintiff must demonstrate that "(1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." *Lawler*, 704 F.3d at 1242. "Harassment cannot be occasional, isolated, sporadic, or trivial; rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 131 (1999) (internal alterations and citations omitted).

Actions are not FEHA harassment if they are mere "commonly necessary personnel management actions." *Lawler*, 704 F.3d at 1244. Such actions may include "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like . . .

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING MOT. TO DISMISS
6

." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64–65, 80 (1996). Harassment, on the other hand, "consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management." *Lawler*, 704 F.3d at 1245 (quoting *Reno v. Baird*, 18 Cal. 4th 640 (1998)) (internal quotation marks omitted). This does not mean that employers can act discriminatorily and cloak their actions in the garb of the management exception; rather, "[t]hese actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment." *Janken*, 46 Cal. App. 4th at 65.

The parties do not dispute that Olsen has adequately pled that he belongs to at least one protected class. However, Sentry contends that Olsen has not pled sufficient facts to support his claim of harassment. Mot. at 6–7.

The Court agrees with Sentry. Olsen has generally pled that he was subject to some kind of harassment, including other employees and his supervisor making untrue statements about him. Compl. ¶¶ 10, 14, 15. However, there are no specific details about what those allegedly untrue statements consisted of. The Court therefore cannot say whether this behavior qualifies as harassment, much less whether it was so severe that it could have created a hostile work environment. *See, e.g.*, *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397 (1994), *as modified* (Mar. 4, 1994) ("When the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, the law is violated." (internal quotation marks omitted)); *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 876–77 (2010) (hostile work environment harassment claim requires conduct that "would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee" (internal quotation marks omitted)). The assessment of whether conduct qualifies as harassment under this standard is based on the totality of the circumstances, including: "(1) the nature of the unwelcome . . . acts or works . . . ; (2) the frequency of the offensive encounters; (3) the total number of days over which all of the offensive conduct occur[red]; and

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING MOT. TO DISMISS

(4) the context in which the . . . harassing conduct occurred." *See Ortega v. Neil Jones Food Co.*, 12-CV-05504-LHK, 2014 WL 232358, at *8 (N.D. Cal. Jan. 21, 2014) (quoting *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 609 (1989)). There are no such facts pled here.

Moreover, there are no facts in the complaint from which the Court may infer that the harassment occurred *because* Olsen was a member of a protected group. Olsen says that "the team of women that were in charge of his assimilation into the company[] hated men," but he again offers little to no facts that would support that allegation. Compl. ¶ 9. He alleges that "[t]his team of women made it very clear on multiple occasions and it was shared around the office that many of the nearly 90% women at the home office disliked working with men." *Id.* But this vague allegation again is devoid of factual details about what exactly was said that would lead one to conclude that others at the company were biased against men. There are no facts connecting Olsen's negative experience with his gender or race, only Olsen's generalized personal conclusions. While the Court must accept as true all "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 664, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Olsen argues that his complaint has pled every element of a harassment claim, Opp'n at 4–6, but the federal pleading standard requires more. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Threadbare recitals based on mere conclusory statements are all Olsen has pled here.

Accordingly, the Court dismisses the claim for hostile work environment harassment.

### D. Claim 3: Disparate Treatment (Discrimination)

The California Supreme Court has explained that "[b]ecause of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000). To establish a prima facie case of discrimination under FEHA, a plaintiff must provide evidence showing "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING MOT. TO DISMISS

8

action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Id.* at 355; *see also* Cal. Gov. Code § 12940(a); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). An inference of discrimination can be established by "showing the employer had a continuing need for [the plaintiff employee's] skills and services in that their various duties were still being performed . . . or by showing that others not in [the plaintiff's] protected class were treated more favorably." *Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1207–08 (9th Cir. 2008) (internal quotation marks and citation omitted).

The Ninth Circuit "define[s] 'adverse employment action' broadly." *Fonseca*, 374 F.3d at 847. An employment action is adverse if it materially affects the compensation, terms, conditions, or privileges of employment. *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000). A decrease in pay is not a prerequisite for demonstrating an adverse employment action. *See Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000) (citing *St. John v. Emp'mt Dev. Dep't*, 642 F.2d 273, 274 (9th Cir. 1981)) (holding that "a transfer to another job of the same pay and status" may be an adverse employment action). Rather, the Ninth Circuit has recognized that "[t]ransfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions.'" *Id.* (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)). However, "mere ostracism" by co-workers does not constitute an adverse employment action. *Id.*

Sentry asserts that Olsen has failed to state a claim for discrimination because he admits in the complaint that he sought to leave Sentry, undermining the only adverse action pled in the complaint: termination. Mot. at 7–8. Sentry argues that it terminated Olsen because he sought to establish a competing business, not because it harbored discriminatory animus against him. *Id.* But that is a factual defense that does not directly address the adequacy of the complaint's allegations so much as it offers an alternative reason for why Olsen cannot prevail on the merits.

Nevertheless, the Court finds that Olsen has not stated a claim for discrimination under FEHA. As to the first element of a discrimination claim, again, the parties do not dispute that

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING MOT. TO DISMISS

9

1   Olsen is a member of a protected class—specifically, at least based on gender. As to the third

2   element, it appears that Olsen has pled at least two adverse employment actions that fall within the

3   applicable statute of limitations period[3]: (1) the denial of Olsen's request for baby bonding leave,

4   and (2) termination. Compl. ¶¶ 18, 20; *see also id.* ¶¶ 33-34. However, Olsen has not adequately

5   pled the second and fourth elements. The complaint is devoid of any facts demonstrating that

6   Olsen was qualified for his position or otherwise performing competently. And again, Olsen does

7   not plead any facts that tie the adverse actions to any of his alleged protected classifications.

8   There are no facts in the complaint from which it may be inferred that Sentry denied Olsen baby

9   bonding leave or terminated him because of his gender or race.

10   Accordingly, the Court dismisses the discrimination claim.

### E.     Claim 4: (Disability Discrimination)

Sentry argues that the Court should dismiss Olsen's disability discrimination claim for two reasons: Olsen failed to exhaust his administrative remedies, and the complaint fails to allege facts sufficient to plead a disability discrimination claim. Mot. at 8–10. The Court first considers the exhaustion issue.

"In order to bring a civil action under FEHA, the aggrieved person must exhaust the administrative remedies provided by law." *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001) (internal quotation marks and citation omitted). "Exhaustion in this context requires filing a written charge with DFEH within one year of the alleged unlawful employment discrimination, and obtaining notice from DFEH of the right to sue." *Id.* "The scope of the written administrative charge defines the permissible scope of the subsequent civil action," and "[a]llegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust." *Id.*

Here, Olsen's DFEH complaint alleges that he was subject to discrimination and harassment, and he checked only the boxes for the following reasons: Baby Bonding Leave, Color,

---

[3] *See supra* Section III.C.1.

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING MOT. TO DISMISS
10

Race, Sex/Gender, Sexual harassment – hostile environment, and Other.  Compl., Ex. A at ECF 27.  He did not check the box for Disability.  *Id.*  In his opposition, Olsen argues only that he checked the "Other" box, noting that he suffered emotional and psychological abuse, and that he therefore pled disability discrimination in his DFEH complaint.  Opp'n at 8.  That argument is simply not consistent with the face of the DFEH complaint.  Next to the Other box, Olsen wrote in: "Slander, Libel, Defamation & emotional & Psychological Abuse In the Course of employment."  Compl., Ex. A at ECF 27.   That written statement is a description of what Olsen alleges he has experienced; it does not describe a physical or mental disability as defined in California Government Code § 12926(j) or (m).

Accordingly, the Court finds that Olsen failed to exhaust his administrative remedies, and his disability discrimination claim is therefore barred.  The Court therefore need not reach the question of whether Olsen adequately states a claim for disability discrimination under Rule 12(b)(6).

### F. Claim 2: Failure to Prevent Harassment, Discrimination, or Retaliation

Under FEHA, it is unlawful for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Gov't Code § 12940(k).  To prevail on a claim asserted under this section, a plaintiff must establish three essential elements: 1) the plaintiff was subjected to discrimination, harassment, or retaliation; 2) the defendant failed to take all reasonable steps to prevent discrimination, harassment, or retaliation; and 3) the defendant's failure caused the plaintiff to suffer injury, damage, loss, or harm.  *Lelaind v. City and Cty. of San Francisco*, 576 F. Supp.2d 1079, 1103 (N.D. Cal. 2008) (citing California Civil Jury Instructions (BAJI) 12.11).

Because Olsen has not adequately alleged facts from which the Court may infer that he was subject to discrimination, harassment, or retaliation based on his gender or race for the reasons described above, the Court likewise finds that he has not stated facts sufficient for a claim for failure to prevent harassment, discrimination, or retaliation.  *Carter v. Cal. Dep't of Veterans Affairs*, 38 Cal. 4th 914, 925 n.4 (2006) (noting that courts have required a finding of actual

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING MOT. TO DISMISS
11

discrimination or harassment under FEHA before a plaintiff may prevail under section 12940(k)). Accordingly, the Court dismisses the retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss with leave to amend to address the deficiencies described above, with the exception of the disability discrimination claim. Olsen shall file an amended complaint by **March 1, 2022**.

**IT IS SO ORDERED.**

Dated: February 15, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING MOT. TO DISMISS
12