UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID OLSEN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>HORTICA INSURANCE COMPANY,<br><br>　　　　　Defendant. | Case No.   5:21-cv-03891-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 22 |

Plaintiff David Olsen brings this action asserting four claims against Defendant Hortica Insurance Company, a subsidiary of Sentry Insurance Company[1]: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) disparate treatment in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(a); and (4) wrongful termination in violation of public policy. ECF No. 21 ("Am. Compl."). Defendant moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). Notice of Motion, ECF No. 22. The Court finds the motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b). Having considered the parties' written submissions, the Court GRANTS IN PART and DENIES IN PART the motion.

I.　　BACKGROUND

Hortica is an insurance company based in Wisconsin. Am. Compl. ¶ 4. Olsen is a

---

[1] Defendant contends that Sentry is the proper defendant. Notice of Motion, ECF No. 22 at 1. In its summary of Olsen's allegations, the Court will refer to "Hortica" and "Sentry" as they appear in Olsen's amended complaint, but it will refer to "Defendant" in its discussion of Olsen's claims.

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
1

California resident who was previously employed by Hortica as an insurance broker specializing in horticulture and agriculture insurance. *Id.* ¶¶ 3, 5.

Before the events giving rise to his claims, Olsen was the co-owner of his own insurance company. *Id.* ¶ 9. In or around 2012, he sold that company's $4 million book of business to Hortica and joined Hortica as an employee. *Id.* ¶¶ 9, 15. Specifically, he entered into an oral contract providing that, in exchange for Olsen's book of business, Hortica would offer training, assign him a sales territory over Northern California, provide qualified leads, and allow him to purchase back his book of business at any time. *Id.* ¶¶ 9, 27-28.

According to Olsen, Hortica did not fulfill its side of the bargain because the team of female Hortica employees in charge of his "assimilation" into the company "hated men." *Id.* ¶ 9. He claims that they made their hatred "very clear on a daily basis[,] five days a week," and it was apparently "well known around the company office cooler that many of the nearly 90% women [sic] at the corporate office disliked working with men." *Id.* (emphasis removed). These employees, who included his administrative assistant, the national director, and Hortica's CEO, allegedly "pigeon[-]holed" Olsen as "being just a 'man'" and participated in coordinated efforts to harass him and stunt his job advancement. *Id.* ¶ 10. He asserts, for example, that he shared his sales territory with Nicole Akemon, who "took an immediate and hostile dislike to [him]" and who "worked every angle to get [him] fired and sabotage his career." *Id.* ¶ 11. Hortica employees purportedly steered potential clients away from Olsen to Akemon because they "hated men and therefore hated [Olsen]," and they provided more scheduled credits and qualified leads to Akemon than to Olsen. *Id.* ¶ 12, 24-25. Further, Olsen avers that two regional assistants refused to work with him due to his gender—and that one told him directly she "did not like working with men"—resulting in him losing $1.25 million in business when they did not respond to emails from Olsen or his clients. *Id.* ¶¶ 23-24.

Conditions became worse after Sentry merged with Hortica in 2016 because Olsen's new supervisor "helped to aid and abet the pervasive antiwhite-male [sic] attitude within the company." *Id.* ¶ 13. Olsen avers that his supervisor "almost on a daily basis ma[d]e derogatory jokes about

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
2

[him] and his gender, ma[d]e racial slurs and personal insults, express[ed] disgust about [his] gender and practiced intolerance toward [him] by making up false accusations." *Id.* ¶ 14. Olsen does not identify what these false accusations were, nor does he provide details about the content of the alleged derogatory jokes and insults.

In August 2019, Olsen called Sentry's national director to protest the harassment he was receiving. *Id.* ¶ 15. The national director then flew to California to meet with Olsen and his supervisor. *Id.* ¶ 16. At that meeting, the national director allegedly admitted that "she had been targeting [Olsen] since the first day of his employment because she dislikes men[,] particularly white-men," that it was her idea to create a hostile work environment, that she believed Olsen "would never make it," that she "tried various schemes hoping [Olsen] would quit," and that she gave preferential treatment to Akemon. *Id.* Olsen avers that the national director apologized on behalf of Sentry and transferred $1.6 million in business to him. *Id.* ¶¶ 16-17. The conditions of Olsen's employment improved until 2020, when his supervisor again began "concocting lies, making derogatory jokes," yelling at, and insulting Olsen. *Id.* ¶ 18. Olsen alleges that this was "intended to force him to quit" and that he "believes [his supervisor's] motive was based on his hatred of white American men and their advancement over Asians within the company." *Id.*

In July 2020, Olsen sent a letter to human resources and senior management about his harassment. *Id.* ¶ 19. In his letter, he outlined "the sales, submissions and achievements that had been removed from [his] performance reviews by [his supervisor]." *Id.* As with the alleged derogatory jokes and insults, Olsen does not offer particulars about what sales achievements were removed. In any case, human resources did not act on the letter, and Olsen requested a meeting. *Id.* ¶¶ 19-20. During the meeting, human resources advised him to cease his complaints and offered to have him speak with an in-house psychiatrist. *Id.*

On October 5, 2020, Olsen attempted to "exercise a verbal promise made by his recruiter" to purchase back his book of business from Sentry. *Id.* ¶ 21. Sentry refused, terminating Olsen and allegedly telling him, "Sentry does not sell books of business and unless there is a contract in writing, your [sic] fired." *Id.* Thereafter, on November 4, 2020, Olsen filed a complaint with the

1  Department of Fair Employment and Housing, which then issued an immediate Right to Sue that
2  same day.  Am. Compl., Ex. A.
3        Olsen filed suit against Hortica in Monterey County Superior Court on April 19, 2021.
4  ECF No. 1-1, Ex. A ("Compl.").  On May 24, 2021, Defendant removed the action to federal
5  court.  ECF No. 1.  On February 15, 2022, this Court dismissed the original complaint with leave
6  to amend.  ECF No. 20.  Olsen filed his amended complaint on February 27, 2022.  Am. Compl.

## II. LEGAL STANDARD

A plaintiff must plead her claims with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  A complaint will not survive a motion to dismiss under Rule 12(b)(6) unless its allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  While a plaintiff need not offer detailed factual allegations to meet this standard, she is required to offer "sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Further, it is not appropriate to litigate factual disputes on a motion to dismiss.  Although a court does not credit conclusory allegations, *Fowler Packing Co. v. Lanier*, 844 F.3d 809, 814 (9th Cir. 2016), it is otherwise required to accept all factual allegations as true and to draw all reasonable inferences in favor of plaintiff.  *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners*, 768 F.3d 938, 945 (9th Cir. 2014).  Even an allegation that is "doubtful in fact" must be assumed true at the pleading stage.  *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

### A. The Court's Standing Order and the Local Rules

Defendant argues that the Court should dismiss the amended complaint because Olsen did not file a redlined version of the amended complaint in violation of the Court's Standing Order, he failed to include a table of contents or a table of authorities in violation of the Local Rules, and his statement of the facts is not "succinct" as required by the Local Rules.  ECF No. 25 at 1-2.  None of these violations comes close to justifying Defendant's requested relief—to disregard Olsen's

Case No.:   5:21-cv-03891-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
4

1  opposition and to dismiss his case—so the Court DENIES Defendant's motion to dismiss on those

2  grounds.  However, the Court reminds counsel that they have an obligation to follow the Court's

3  Standing Order and the Local Rules, and they should seek assistance to the extent they are

4  unfamiliar with the technology required to comply with either.

### B. Scope of Leave to Amend

When the Court granted Defendant's motion to dismiss the original complaint, it specified that Olsen had "leave to amend to address the deficiencies described" in its Order, with the exception of Olsen's disability discrimination claim.  ECF No. 20 at 12.  However, in his amended complaint, Olsen added three new claims that are now before the Court for the first time: breach of contract, breach of the implied covenant of good faith and fair dealing, and wrongful termination in violation of public policy.  *Compare* Am. Compl., *with* Compl.  Defendant contends that Olsen exceeded the scope of his leave to amend by adding the new claims, so those new claims should be dismissed.  Memorandum of Points & Authorities ("MPA"), ECF No. 22 at 4-7.

Courts in this district have held that, when a plaintiff is granted leave to amend to correct specific deficiencies identified in an order, she may not add new claims.  *Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2016 WL 3421361, at *3 (N.D. Cal. June 22, 2016); *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010); *see also Jameson Beach Prop. Owners Ass'n v. United States*, No. 2:13-cv-01025-MCE-AC, 2014 WL 4925253, at *4 (E.D. Cal. Sept. 29, 2014).  At the same time, "the Federal Rules call for liberal amendment of pleadings before trial."  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574-75 (9th Cir. 2020); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so requires.").  Dismissing Olsen's new claims on the basis that they exceeded the scope of leave to amend would frustrate the policy of liberal amendment because this is the first time Olsen has amended his complaint.  That is particularly so where there is no reason to believe that the addition of these new claims prejudiced Defendant.  Accordingly, the Court construes Olsen's opposition as a belated motion for leave to amend to add the three claims identified above (ECF No. 24 at 10-11), GRANTS leave to amend as to those claims, and

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
5

1 DENIES the motion to dismiss to the extent it relies on the argument that Olsen exceeded the
2 scope of his leave to amend. *See Andrew W. v. Menlo Park City Sch. Dist.*, No. C-10-0292 MMC,
3 2010 WL 3001216, at *2 (N.D. Cal. July 29, 2010) (construing plaintiff's opposition as a motion
4 for leave to amend).

### C.  Breach of Contract

Although Olsen makes only a single claim for breach of contract, it appears that he alleges two separate breaches. First, he alleges that Defendant breached an express oral contract when it refused to sell his book of business back to him. Am. Compl. ¶¶ 27-28. Second, he alleges that Defendant breached an implied-in-fact employment contract when it terminated him without cause. *Id.* ¶¶ 27, 29-31. The Court addresses each in turn.

#### 1.  Express Oral Contract

To plead a claim for breach of contract, Olsen must first plead that an enforceable contract exists. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990). Ordinarily a contract may be either oral or written, but the statute of frauds bars enforcement of certain types of contracts unless they are in writing. *See, e.g.*, Cal. Civ. Code §§ 1624, 1624.5. The statute of frauds is an affirmative defense, Fed. R. Civ. P. 8(c)(1), and a plaintiff generally "need not plead on the subject of an anticipated affirmative defense." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (internal quotations and citation omitted). However, "[w]hen an affirmative defense is obvious on the face of a complaint, . . . a defendant can raise that defense in a motion to dismiss." *Id.*

As relevant here, California Civil Code § 1624.5 bars the enforcement of contracts for the sale of personal property worth $5,000 or more unless there is a written record of the contract that identifies the price and property being sold. Personal property is broadly defined as all property that is not real property. Cal. Civ. Code § 663. Thus, a business's good will—its "expectation of continued public patronage"—is considered personal property. Cal. Bus. & Prof. Code § 14100; Cal. Civ. Code § 655.

In this case, the statute of frauds defense is immediately apparent on the face of the

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
6

amended complaint. The contract at issue is for the sale of Olsen's $4 million book of business: in exchange for the book of business, Defendant promised to provide Olsen with training, a Northern California sales territory, and qualified leads. Am. Compl. ¶¶ 9, 27. The contract also called for Defendant to sell that book of business back to Olsen upon his request. *Id.* Because a book of business is a form of good will and personal property, the pleaded contract falls squarely within the ambit of California Civil Code § 1624.5. Moreover, Olsen affirmatively pleads that the contract was oral, not written. He alleges that the parties entered into the contract through a "verbal promise" and "oral representations," and he makes no allegations of any written records of the contract. Am. Compl. ¶¶ 21, 28. As such, Olsen's claim is barred by the statute of frauds, and the Court GRANTS the motion to dismiss as to Olsen's claim for breach of an express oral contract.

### 2. Implied-in-Fact Contract

Under California law, employment is presumed to be at-will if there is no express agreement specifying the length of employment or grounds for termination. Cal. Lab. Code § 2922; *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 677 (1988). An employee can rebut that presumption by showing the parties' conduct created an implied-in-fact contract restricting the employer's ability to terminate her. *Id.* To demonstrate an implied-in-fact contract exists, she may offer allegations about her employer's personnel policies, her longevity of service, actions or communications by her employer reflecting assurances of continued employment, or industry practices. *Id.* at 680. But allegations that are merely consistent with "rewards for the employee's continuing valued service" alone are insufficient to create for-cause protections. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 342 (2000). She must show that "the employer's words or conduct . . . gave rise to [the] *specific* understanding" that she could not be terminated at will. *Id.* (emphasis in original).

Olsen's allegations are insufficient to establish the existence of an implied-in-fact contract. To support his claim, he points to allegations that he had worked at Defendant for ten years and received satisfactory performance reviews. Am. Compl. ¶¶ 22, 30. Yet, the California Supreme

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
7

1   Court and other courts have expressly held that longevity combined with favorable performance
2   reviews is insufficient to form an implied-in-fact contract. *Guz*, 24 Cal. 4th at 341-42 ("[A]n
3   employee's *mere* passage of time in the employer's service, even where marked with tangible
4   indicia that the employer approves the employee's work, cannot *alone* form an implied-in-fact
5   contract that the employee is no longer at will.") (emphasis in original); *see also Landucci v. State*
6   *Farm Ins. Co.*, 65 F. Supp. 3d 694, 713-14 (N.D. Cal. 2014) ("[L]ongevity of service and good
7   performance reviews alone are not enough to prove the existence of an implied contract.").

8   Olsen's remaining allegations are too conclusory to support his claim. Although he alleges
9   "[t]here existed an established policy" that employees could not be fired without cause, he does
10  not explain where to find this policy, how it was communicated to employees, or otherwise offer
11  facts going beyond his naked assertion that a policy exists. Am. Compl. ¶ 29. Similarly, he
12  alleges that "oral representations" from his recruiter led him to believe he could only be fired for
13  cause but fails to identify what those representations were. *Id.* ¶ 28. In fact, the specific promises
14  that Olsen enumerates do *not* include any promise that Olsen could only be terminated for cause.
15  *Id.* ¶¶ 9, 27. Accordingly, the Court GRANTS the motion to dismiss as to Olsen's claim for
16  breach of an implied-in-fact employment contract.

### D. Breach of the Implied Covenant of Good Faith and Fair Dealing

18  "The prerequisite for any action for breach of the implied covenant of good faith and fair
19  dealing is the existence of a contractual relationship between the parties, since the covenant is an
20  implied term in the contract." *Smith v. City & Cnty. of San Francisco*, 225 Cal. App. 3d 38, 49
21  (1990). As a result, there is no claim for breach of the implied covenant when there is no
22  underlying contract. *Landucci*, 65 F. Supp. 3d at 715. Having determined that Olsen failed to
23  plead the existence of an enforceable contract, the Court GRANTS the motion to dismiss his claim
24  for breach of the implied covenant.

### E. Disparate Treatment Under FEHA

26  To survive a motion to dismiss, a plaintiff must plead a prima facie case of discrimination.
27  *See Caldwell v. Paramount Unified Sch. Dist.*, 41 Cal. App. 4th 189, 202 (1995) (holding that a

28  Case No.: 5:21-cv-03891-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
8

plaintiff's prima facie case may be tested by demurrer); *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 905 (E.D. Cal. 2017) (applying the elements of the prima facie case to FEHA claims on a motion to dismiss). Establishing a prima facie case requires a plaintiff to show: (1) she was a member of a protected class; (2) she was qualified for the position sought or performing competently in the position held; (3) she suffered an adverse employment action; and (4) some other circumstance suggests discriminatory motive. *Guz*, 24 Cal. 4th at 355; *see also Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). FEHA is a California statute, but "[b]ecause of the similarity between state and federal employment discrimination laws," courts assessing FEHA claims may "look to pertinent federal precedent" for guidance. *Guz*, 24 Cal. 4th at 354.

Defendant challenges only the fourth element of the prima facie case, arguing that Olsen's allegations fail to show he was terminated because of his race and gender.[2] It argues that it terminated Olsen upon discovering he wished to separate from Sentry and enter into a competing business he had created months before. MPA at 10. However, facts about Olsen's competing business are not alleged in the amended complaint, and the Court may not consider factual disputes on a motion to dismiss. Even though the timing of Olsen's termination—immediately after he sought to buy back his book of business (Am. Compl. ¶ 21)—could support an inference in favor of Defendant's version of events, the Court must draw all inferences in favor of Olsen.

Here, despite many of Olsen's allegations being conclusory statements about unspecified harassment or his co-workers' and supervisors' "hatred" of his gender and race, he has nonetheless alleged sufficient facts to survive a motion to dismiss. Olsen alleges the national director expressly admitted to him that she "had been targeting [him] . . . because she dislikes men[,] particularly white-men," and had "tried various schemes hoping he would quit." Am. Compl.

---

[2] Defendant appears to concede that Olsen has pleaded the first and third elements of a prima facie case. MPA at 10 & n.1. Defendant does not address the second element in its motion, so the Court does not analyze whether Olsen has adequately pleaded that he was qualified or performing competently. But the Court notes that when dismissing the original complaint, it found Olsen had failed to adequately plead the second element, ECF No. 20 at 10, and it is not clear the amended complaint contains sufficient, non-conclusory allegations to remedy that deficiency.

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
9

¶ 16. The allegation that one of his managers wanted him to quit due to gender and racial animus, even if not directly tied to Olsen's termination, supports an inference that his termination was due to his protected class. *See Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 801 (N.D. Cal. 2015) (holding that comments suggesting the existence of bias are evidence of discriminatory animus). Additionally, Olsen alleges that Akemon received 30% more scheduled credits and more qualified leads than he did. Am. Compl. ¶¶ 24-25. On its own, this disparity in treatment can be explained by non-discriminatory reasons, but in combination with the national director's alleged statements, it is sufficient as a pleading matter to show that Olsen's termination was due to a discriminatory motive. *See Ayala*, 263 F. Supp. 3d at 906-07 (allegations of sexual and racial comments combined with allegations of differential treatment were sufficient to state a FEHA claim).

Accordingly, the Court DENIES the motion to dismiss as to Olsen's FEHA claim.

### F.     Wrongful Discharge in Violation of Public Policy

In addition to contractual limitations on terminating employees, the California Supreme Court also recognizes a tort cause of action for wrongful terminations violating public policy. *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167 (1980). For a public policy to support a *Tameny* claim, it must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003) (quoting *City of Moorpark v. Superior Ct.*, 18 Cal. 4th 1143, 1159 (1998)). The tort "is not a vehicle for enforcement of an employer's internal policies or the provisions of its agreements with others." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1257 (1994). The only policy that Olsen identifies is his agreement with Defendant to purchase back his book of business. Am. Compl. ¶ 53. That is precisely the type of private agreement that cannot support a *Tameny* claim, so the Court GRANTS the motion to dismiss the claim.

## IV. CONCLUSION

The Court DENIES Defendant's motion to dismiss Olsen's disparate treatment claim under FEHA but GRANTS Defendant's motion to dismiss as to all other claims. Because Olsen has not previously had an opportunity to amend his contract-based claims and his *Tameny* claim, the Court cannot conclude that further amendment would be futile and therefore GRANTS leave to amend. Olsen may amend his complaint to cure the deficiencies identified above. He may not add new claims, nor may he revive the claims dismissed from his original complaint but not pled in his amended complaint.

Olsen shall file any amended complaint by **March 13, 2023**, and failure to do so shall result in his contract-based claims and *Tameny* claim being dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: February 27, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-03891-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
11